600 So.2d 469 (1992)
EASTERN CEMENT, Appellant,
v.
HALLIBURTON COMPANY, Appellee.
No. 89-3245.
District Court of Appeal of Florida, Fourth District.
April 8, 1992.
Rehearing Denied July 8, 1992.
*470 Russell S. Bohn of Edna L. Caruso, P.A., and Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellant.
Jane Kreusler-Walsh of Klein & Walsh, P.A., and Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.
PER CURIAM.
The seller of cement pumping equipment sued the buyer, a cement importer, for breach of contract, thereby spawning counterclaims, two of which we address, namely, a count for fraudulent misrepresentation and another for breach of an implied warranty of fitness. The trial court directed a verdict in favor of the seller on both counts. We reverse on both counts.
The buyer is in the business of importing cement and transports it by ship to terminals where pneumatic conveying systems are used to pump the cement into storage silos. The seller has been in the business of making cement pumping equipment since 1919 and has substantial experience in that field, though expertise with portable systems using flexible lines, as required here, is one of the bones of contention. The contract in question called for the seller to build a "ship-unloading system" which would "convey 190/200 metric tons [of cement] per hour for a distance of 1,100 feet and vertical 180 feet." Allegedly, the system produced and installed by the seller did not perform as it should have, despite extensive modification attempts, and so the buyer refused to pay for it. Thereafter, as we have already noted, the seller sued for the full amount of the contract and the buyer unsuccessfully counterclaimed.[1] On the seller's claim, the jury found the system did not conform to the contract and thus, the seller was not entitled to breach of contract damages. However, the jury found the seller was entitled to payment for replacement parts. The buyer now appeals the directed verdict against it on the counterclaims.

I.

FRAUDULENT MISREPRESENTATION
We begin our analysis by addressing the issue of fraudulent misrepresentation allegedly committed by the seller. In its pleadings, the buyer alleges that it was induced into entering the contract because of the seller's misrepresentation that "it had extensive experience making similar or identical operations" when in fact it did not have that requisite experience. The law is quite clear that the five elements of fraudulent misrepresentation include: (1) a misrepresentation of a material fact; (2) knowledge on the seller's part that its misrepresentation is false; (3) an intention by the seller that the buyer rely on the misrepresentation; *471 (4) justifiable reliance by the buyer and (5) resulting injury or damages. Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985).
The buyer's president testified that seller's representatives told him that the seller had extensive experience in conducting similar or identical operations. He further testified that but for the representations as to the seller's experience, the buyer would not have entered into the contract. The buyer also introduced substantial testimony that the seller's experience in similar operations were not similar at all to what the buyer required. The trial court determined that these representations as to experience were merely trade talk or puffings. We disagree. Trade talk or puffing relates to matters of opinion, whereas a representation regarding experience consists of a statement of past or existing fact. A misrepresentation as to the extent of past experience can be a foundation for an action for fraud, cf. Amazon v. Davidson, 390 So.2d 383 (Fla. 5th DCA 1980), especially as there is no duty to investigate its truth or falsity unless the recipient knows of its falsity, a situation not present here. See Besett v. Basnett, 389 So.2d 995 (Fla. 1980). While there was conflicting evidence as to the similarity of other experiences and also as to whether the buyer justifiably relied on the representations because some prior experience with the seller, these were issues of fact for the jury to resolve. The trial court erred in directing a verdict on this count.

II.

BREACH OF IMPLIED WARRANTY
Passing next to the question of implied warranty of fitness for use as intended, we believe the trial judge erred when he entered a directed verdict in favor of the seller. It is axiomatic that a binding contract requires an offer and an acceptance.[2] In the case at bar, the written offer quite clearly set forth that no warranties were to be given. However, the written acceptance just as clearly required that an express warranty be included. At common law, this particular acceptance would have constituted no more than a counter offer under the mirror image rule. Hohenberg Bros. Co. v. Killebrew, 505 F.2d 643, 645 (5th Cir.1974). However, the Uniform Commercial Code changes that by permitting an acceptance to be operative as an acceptance even though it introduces additional or different terms. See § 672.207(1), Fla. Stat. (1989) (Florida's adoption of the Uniform Commercial Code).
The question then is whether the conflicting or different terms in this case cancel each other out or, if not, which one controls?[3] In their authoritative work, Uniform Commercial Code, Professors White and Summers indicate that "where clauses on confirming forms sent by both parties conflict, each party must be assumed to object to a clause of the other." J. White and R. Summers, Uniform Commercial Code, § 1-3 (1988). As a consequence, in Professor White's view, which we adopt, and which the courts prefer, the two conflicting terms cancel each other out and the contract proceeds under terms to which the parties have agreed if those remaining terms and conditions suffice to support an intelligent meeting of the minds. Accord Challenge Machinery Co. v. Mattison Machine Works, 138 Mich. App. 15, 359 N.W.2d 232 (1984); S.C. Gray, Inc. v. Ford Motor Co., 92 Mich. App. 789, 286 N.W.2d 34 (1979); Leonard Pevar Co. v. Evans Products Co., 524 F. Supp. 546 (Del. 1981).
Applying that analysis to the case at bar, the result would be that both the denial of warranty in the offer and the requirement of one in the acceptance would cancel each other out and the contract proceed without reference to either one. That, however, is not the end of the matter because Professor White further advocates *472 that a gap-filler from the code, if available, supply the missing term. Under section 672.314, Florida Statutes (1989), if the seller is a "merchant," which it clearly is sub judice, see section 672.104(1), Florida Statutes (1989), an implied warranty that the goods are fit for the particular purposes of use and are merchantable, arises. See § 672.314- § 672.315, Fla. Stat. (1989). Additionally, under section 672.715, Florida Statutes (1989), the buyer can recover both incidental and consequential damages when these implied warranties are read into the contract.
We thus conclude, under the case at bar, that it was error to grant the directed verdict on this issue and we reverse and remand for further proceedings.

COSTS
There is no present indication as to which side will finally emerge as the prevailing party in this cause, we must at least temporarily, reverse the taxing of costs, interest and attorney's fees against the buyer and postpone that reckoning until the final outcome. See Magner v. Merrill Lynch Realty/MCK, Inc., 585 So.2d 1040 (Fla. 4th DCA 1991).
We find no other reversible error on appeal.

COMMENTARY
We recognize that the analysis in the second issue and the citations employed are not apparent in the briefs and were not argued to the trial judge. Nonetheless, the issues we have addressed are definitely presented on appeal so we have not exceeded appellate propriety.
Reversed and remanded for a new trial as to the counterclaim's counts for fraudulent misrepresentation and breach of implied warranty fitness.
DOWNEY J., concurs.
LETTS, J., concurs in part II and dissents as to part I.
WARNER, J., concurs in part I and concurs in result only in part II.
LETTS, Judge, dissenting as to Part I.
It is necessary to place the alleged fraudulent misrepresentation here in the proper context. The buyer signed the contract after approximately one month of negotiations. Initial negotiations took place over the telephone. The buyer, however, insisted that the seller visit its plant and view its operation before it would sign the contract. The testimony concerning when the alleged misrepresentation occurred comes from the buyer's president. He testified that after the seller's representative viewed the equipment the following occurred:
BUYER'S PRESIDENT: [O]bviously, I was concerned with the experience in this specific equipment and he [the seller] mentioned many ships, many areas but I never really got to nail him down on any specific vessel, any location and I tried to and he kind of diplomatically danced around it and quite frankly I didn't realize it, but in retrospect, when I think back, I now know why he didn't; he apparently had very limited experience.

Q: Now, let me ask you, although he would not identify specific installations or specific customers for you, whether he made specific statements concerning the amount of experience [the seller] had in dealing with the exact needs that [the buyer] presented in its discharge unloading operation?
BUYER'S PRESIDENT: Well, he told me they had had extensive experience in operating similar or identical operations, and I was of the opinion  I took him for his word, because you have to recognize, [the seller] is a very, very big company.
Q: Now, at the time that he told you that they had had extensive experience in identical operations, did he know that your operation involved clam shell unloading into a hopper?
BUYER'S PRESIDENT: Well, we refused to do any negotiations or discussions until he came and actually saw what we were doing.

Q: Did he then know, as a result of having seen exactly what you were doing, *473 that when he said they had identical experience, your requirements included clam shell unloading into a hopper?
BUYER'S PRESIDENT: We told him on the phone, but when he came there, he physically saw it, and he couldn't  it was obvious.

(Emphasis added.)
I conclude from the above testimony that the seller's representative made the statement, that the seller "had extensive experience making similar or identical operations", during the initial telephone negotiations before he visited the plant rather than after he actually viewed the buyer's operation. The buyer did not introduce any evidence that the statement was false, that is, that the seller did not have any experience making similar or identical operations. Instead, its only argument was that the other operations were not similar enough.
It is conceded that there is no standard installation of this type and that "no two systems are exactly alike." The seller's employee testified that he was personally involved with over 1,000 pneumatic conveying systems, all of which were similar in some respect to the buyer's system. Although the buyer introduced voluminous testimony that each of those other operations was different in some respect from its operation, that testimony only showed that they were not identical. The testimony did not show that they were not similar. As such, the buyer failed to introduce evidence that the statement was false.
However, even were I to determine that the testimony leaves doubt as to when the statement was made and assume it was made after the seller viewed the equipment, the granting of a directed verdict on this issue would still be proper. Not every false statement constitutes actionable fraud. Three categories of false statements are generally not considered actionable fraud: opinions, sales or trade talk, or statements of intention or promises. 37 Am.Jur.2d Fraud and Deceit §§ 41-44 (1974). The buyer claims that he relied upon the statement that the seller had extensive experience making similar or identical operations in entering the contract in this case. In essence, the buyer was not induced to enter the contract by the mere statement itself, as the majority suggests, but rather by the implicit promise which flows from the statement, that because of that experience the seller would design and deliver the buyer's precise operation. In exchange for that promise, the buyer contracted to pay for the system.
"A false statement amounting to a promise to do something in the future is not actionable fraud." Sleight v. Sun and Surf Realty, Inc., 410 So.2d 998, 999 (Fla.3d DCA 1982). Rather, it must be shown that "the promisor had a specific intent not to perform at the time the promise was made." Century Properties, Inc. v. Machtinger, 448 So.2d 570, 572 (Fla.2d DCA 1984). See also Alexander Davis Properties, Inc. v. Graham, 397 So.2d 699, 706 (Fla. 4th DCA), rev. denied, 408 So.2d 1093 (Fla. 1981) ("a promise may be actionable as fraud where it can be shown that the promisor had a specific intent not to perform the promise at the time the promise was made.")
In the case at bar, I have searched the record in vain for any evidence that the seller never intended to fulfill the contract or knew it could not at the time of contracting. On the contrary, it is clear the seller did try to perform and spent roughly a quarter of a million dollars more than expected in attempts to modify and thereby fulfill its obligation. At best, the evidence shows only that its competence to do so was lacking.
There being no evidence from which this court can discern an intent on the part of the seller not to fulfill the contract when it was formed, I would affirm the directed verdict on this ground also. See Gentile v. Rodriguez, 583 So.2d 382, 383 (Fla.3d DCA 1991) (a count alleging fraudulent inducement in signing an agreement properly dismissed since it totally failed to allege that the representation was made without any intention of performing the promise); Century Properties, Inc. v. Machtinger, 448 So.2d 570 (Fla.2d DCA 1984) (award of punitive damages based on fraud in the inducement to contract reversed since evidence *474 showed only that the promise to perform was breached not that promisor had intention not to perform at time of contracting).
NOTES
[1] There are other counts to both the complaint and the counterclaims. We address only those necessary to support our conclusion.
[2] We construe the March 25, 1985 letter to be the offer and the April 12, 1985 telex to be the acceptance.
[3] We also construe these conflicting terms to be "different" rather than "additional." See § 672.207(2), Fla. Stat. (1989).