648 So.2d 168 (1994)
THOR BEAR, INC., Appellant,
v.
CROCKER MIZNER PARK, INC., a Florida corporation, as a general partner of Crocker Mizner Park I, Ltd., a Florida limited partnership, as general partner of Crocker Downtown Development Associates, a Florida general partnership, and the City of Boca Raton, Appellees.
No. 93-3405.
District Court of Appeal of Florida, Fourth District.
November 16, 1994.
Opinion Denying Rehearing but Granting Clarification January 4, 1995.
*170 Charles Wender of Smith, Smith & Wender, P.A., Boca Raton, for appellant.
William M. Vazquez of Greenberg & Vazquez, Boca Raton, for appellees.
PER CURIAM.
This is an appeal from the trial court's order which granted appellee's motion for judgment in accordance with prior motions for directed verdict (i.e., "belated directed verdict") and entered final judgment in favor of appellee, vacating the jury's verdict in favor of appellant. We reverse and remand for the trial court to rule upon appellee's motion for new trial.
There are two issues on appeal: (1) Whether the record, viewed in a light most favorable to appellant, supported the jury's verdict in favor of appellant on its claim of fraud and misrepresentation. We conclude that it did. (2) Whether the trial court should be permitted on remand to rule on appellee's alternative motion for a new trial. We conclude that it should.
In early July of 1991, appellant entered into a written lease with appellee for space in the Mizner Park shopping complex in Boca Raton for the purpose of operating a retail movie video store. The ten year lease was to commence in October 1991, but appellant was to commence construction and improvements on the empty space prior to then. Appellant placed a $75,000 rent security deposit with appellee and spent about $160,000 in leasehold improvements. The store was completed and opened for business in mid November, 1991.
Appellant's store unexpectedly did not do well during its first month of operation, despite the holiday season, advertising and promotions run by appellant. By the end of December, the store had failed and was closed. Appellant's vice president, Mark Votypka, testified that the store's failure was due to inadequate parking facilities which created traffic jams and thereby discouraged and prevented customers from coming in; that appellant had spent $40,000 on advertising  which was thrown away because the effect of such advertising efforts only lasts for a finite time; that he did not foresee the parking problem getting better so as to remedy the problem; and that rather than "pouring good money after bad," appellant chose to close down.
Appellant had negotiated the lease with Teresa Hall, who was then appellee's vice-president of leasing, over a period of several months during the spring of 1991. Mr. Votypka testified that he explained to Ms. Hall on numerous occasions that the nature of the store as a video rental shop required quick ingress and egress and ample parking. Mr. Votypka testified that "[Ms. Hall] said that's no problem, Mizner Park has all that. We can accommodate you." Mr. Votypka also testified that Ms. Hall told him that more paved parking would be built on a grassy area nearby the store when the leasing trailer was removed from that area sometime that summer.
Mr. Votypka testified that he had observed Mizner Park on several occasions during the negotiation period, but did not observe any problems with traffic and parking; that as time went on, he began to worry about appellee's claim that it would be building more parking that summer because this did not happen; that he was told these plans had been delayed; and that around the end of September, he became concerned that there were too many cars for the number of spaces.[1] Around this time, Ms. Hall was *171 replaced. Mr. Votypka testified that he was told by the new on-site property manager that there were never any plans to build more parking in the area near appellant's store. After the store closed, he was told by Richard Ackerman, vice-president of Crocker & Co., that although appellee was planning to put in additional parking on the other end of the shopping complex, it was not planning on putting parking in appellant's area. In short, Ms. Hall had been wrong.
The Executive Director of the Boca Raton Community Redevelopment Agency, Jorge Camejo, testified that since the opening of Mizner Park in December of 1990, there had been a parking problem in that the demand for parking exceeded availability; and that the parking problem was covered in the newspapers. Mr. Camejo himself observed some parking difficulties when he visited Mizner Park soon after it opened. He indicated that around March of 1991, he discussed this situation with "Ackerman or someone on behalf of Crocker & Co." Furthermore, since this was to be the first true season at Mizner Park, the demand was expected to be greater than that of the prior season. Due to complaints from tenants and patrons regarding parking difficulties, a parking committee was formed and determined that a study was warranted.
Finally, Mr. Ackerman testified that his company knew of the parking problems prior to the time that appellant entered into his lease with appellee:
Q: ... I asked when did you become first aware of a parking problem in Mizner Park?
A: I think sometime into the first season that the project was going to be very successful. We didn't realize until all the stores started to open.
Q: And that would be in the beginning of 1991, correct?
A: That would be before we actually leased the space to Mark [Votypka/appellant].
Furthermore, in response to whether he was aware of public outcry or criticism regarding the parking problem at Mizner Park during the first year, Mr. Ackerman responded that there were newspaper articles written about the project and that at certain times during the day it was difficult to park at Mizner Park.
Claiming about $400,000 in losses, two of appellant's counts went to the jury, which returned a verdict in favor of appellee on the count of constructive eviction, but returned a verdict in favor of appellant on the count of fraud and misrepresentation in the inducement of the contract. It awarded appellant $35,000 in damages. Subsequently, the trial court granted appellee's motion for judgment in accordance with prior motions for directed verdict, stating: "The only evidence Plaintiff [appellant] presented at trial was that Crocker [appellee] made statements of opinion about a future state of affairs, and presented no evidence that Crocker [appellee] had a positive intention not to perform at the time the statement of opinion was made. That is not actionable fraud. Taking all of the evidence in the light most favorable to the Plaintiff [appellant] and drawing all reasonable inferences therefrom, there was no evidence that justified this matter being presented to the jury." (citations omitted). Accordingly, the trial court vacated the jury verdict on the fraud count and pronounced final judgment in favor of appellee on both counts.

I
In considering a motion for a directed verdict, the trial court is required to view the evidence in the light most favorable to the nonmoving party and draw all reasonable conclusions and inferences favorable to the nonmoving party. Levine v. Frank, 311 So.2d 708 (Fla. 3d DCA 1975), cert. denied, 327 So.2d 33 (Fla. 1976). A directed verdict should not be granted unless no view of the evidence could support a verdict for the nonmoving party. Tesher & Tesher, P.A. v. Rothfield, 387 So.2d 499 (Fla. 4th DCA 1980). *172 The same standards apply to a post-verdict motion for judgment in accordance with prior motions for directed verdict and to the appellate court's review of such directed verdicts. McDonald v. McGowan, 402 So.2d 1197 (Fla. 5th DCA), rev. dismissed, 411 So.2d 380 (Fla. 1981); Whitman v. Red Top Sedan Service, Inc., 218 So.2d 213 (Fla. 3d DCA), cert. denied, 225 So.2d 537 (Fla. 1969).
The elements necessary to establish a cause of action for fraudulent misrepresentation are: (1) a false statement or misrepresentation of a material fact; (2) the representor's knowledge at the time the misrepresentation is made that such statement is false; (3) such misrepresentation was intended to induce another to act in reliance thereon; (4) action in justifiable reliance on the representation; and (5) resulting damage or injury to the party so acting. Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985); Eastern Cement v. Halliburton Co., 600 So.2d 469, 470-71 (Fla. 4th DCA), rev. denied, 613 So.2d 4 (Fla. 1992); Hamlen v. Fairchild Indus., Inc., 413 So.2d 800, 801 (Fla. 1st DCA 1982); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367, 1371 n. 7 (Fla. 4th DCA 1981).
The general rule of law is that a false statement of fact must concern a past or existing fact in order to be actionable. Vance, 403 So.2d at 1371. A successful action for fraudulent misrepresentation may not ordinarily be premised upon a promise of future action. Id. However, an exception to this rule is recognized where the promise of future action is made with no intention of performing or with a positive intention not to perform. Id. We agree with appellant that viewing the evidence in a light most favorable to appellant could support the jury's verdict on either of these bases: a false statement of an existing fact or a promise of future action with no intention of performing.

A. FALSE STATEMENT OF EXISTING FACT

A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact. Chino Elec., Inc. v. United States Fidelity & Guar. Co., 578 So.2d 320 (Fla. 3d DCA 1991). Participants in a normal business transaction are not entitled to rely upon such "ephemeral matters" as opinions, judgments or legal views expressed by an opposing party. Id. at 323; see also Nagashima v. Busck, 541 So.2d 783 (Fla. 4th DCA 1989). However, where a statement can be viewed as coming from one with superior knowledge of the subject of the statement, such statement may constitute a statement of fact rather than opinion, as it might be considered if the deal had been negotiated by parties on equal terms. A.S.J. Drugs, Inc. v. Berkowitz, 459 So.2d 348, 350 (Fla. 4th DCA 1984); Amazon v. Davidson, 390 So.2d 383, 386 (Fla. 5th DCA 1980); Ramel v. Chasebrook Constr. Co., 135 So.2d 876, 881-82 (Fla. 2d DCA 1961).
Due to Ms. Hall's position as vice-president of leasing, her statements that Mizner Park could accommodate Mr. Votypka's stated parking needs could be viewed as coming from one with superior knowledge of the traffic patterns particular to Mizner Park. This conclusion is supported by the fact that her statements were not equivocal. Accordingly, her statements should be treated as factual assertions. Furthermore, Mr. Votypka's testimony furnished evidence upon which the jury could find that the misrepresentations regarding parking were material.
Appellant does not contest that there were ten spots in front of its store and eighty within walking distance, as Ms. Hall had told Mr. Votypka. Rather appellant's argument is that Ms. Hall knew this parking was not adequate for appellant's needs as expressed by Mr. Votypka. We conclude that the testimony presented provided sufficient evidence from which the jury could infer that Ms. Hall made a false statement concerning an existing fact.
The knowledge element of fraudulent misrepresentation is satisfied where a representation is made "without knowledge as to either truth or falsity" or when a representation is made "under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof." Alexander/Davis Properties, Inc. v. Graham, 397 So.2d 699, 706 (Fla. 4th DCA), rev. denied, *173 408 So.2d 1093 (Fla. 1981). Although the newspaper articles from early 1991 were not admitted into evidence, there was admitted testimony regarding the newspaper articles; and Mr. Ackerman's testimony was that he was aware of parking problems prior to the time that appellant entered into its lease with appellee. Accordingly, even if no direct evidence was presented regarding Ms. Hall's actual knowledge, the jury could reasonably infer from the evidence and Ms. Hall's position as vice-president of leasing that her statements were made without regard for their truth or falsity or that she ought to have known of the falsity of her statements.
Finally, appellee argues that appellant's reliance on Ms. Hall's representation that the parking was adequate was not reasonable. In light of Ms. Hall's position and presumed knowledge of the traffic flow cycles, the jury could reasonably conclude that appellant's reliance was justifiable. As appellant indicates, a determination of reliance is typically left to the trier of fact. Pinzl v. Lapointe, 426 So.2d 65 (Fla. 5th DCA 1983).[2]
In sum, although a different jury may have come to a different conclusion, there was evidence presented upon which the jury could reasonably conclude that appellant established the elements of fraudulent misrepresentation in the inducement of the lease based upon Ms. Hall's statements that parking was adequate for the needs expressed by Mr. Votypka. Since viewing the evidence and all reasonable inferences in favor of appellant could support the jury's verdict for appellant based on a false statement of an existing fact, the trial court erred in granting appellee's motion for judgment in accordance with prior motions for directed verdict and entering final judgment in favor of appellee.

B. PROMISES OF FUTURE ACTION

As discussed above, fraudulent misrepresentation also may be premised upon a promise of future action where such promise is made with no intention of performing or with a positive intention not to perform. Vance, 403 So.2d at 1371. This provides an alternative basis upon which the jury's verdict could be supported.
In the instant case, Mr. Votypka testified that Ms. Hall told him there would be additional paved parking in the area near appellant's store when the leasing trailer was removed that summer; and that he was told by both Ms. Hall's replacement and by Mr. Ackerman that there was never any intention to build that parking and that Ms. Hall was wrong. From this testimony and from Ms. Hall's position, the jury could reasonably infer that at the time a promise of future action was made, Ms. Hall had no intention of performing. Furthermore, based on Ms. Hall's position, the jury could reasonably infer that Ms. Hall would know of any such plans. Accordingly, the jury could reasonably conclude that appellant's reliance on Ms. Hall's statement was justified.

II
In granting appellee's motion for judgment in accordance with prior motions for directed verdict, the trial court declined to rule upon appellee's motion for new trial. The trial court may grant a motion for new trial as an alternative ruling in case the judgment in accordance with prior motions for directed verdict is reversed on appeal. Reams v. Vaughn, 435 So.2d 879, 881 (Fla. 5th DCA 1983). In fact, we urge the trial courts to rule on such motions for new trial in order to eliminate the possibility of a second appeal. See also Kilburn v. Davenport, 286 So.2d 241, 244 (Fla. 3d DCA 1973), cert. denied, 295 So.2d 301 (Fla. 1974).
However, where the trial court has ruled upon a motion for judgment in accordance with prior motions for directed verdict, but not upon the motion for new trial, the appropriate procedure upon reversal is to instruct the trial court on remand to rule upon the motion for new trial. See id. The standard for granting a new trial is different from that of a directed verdict and the decision of *174 whether to grant a new trial rests within the sound discretion of the trial court. See id.
HERSEY, GLICKSTEIN and KLEIN, JJ., concur.

ON MOTIONS FOR REHEARING AND CLARIFICATION
We deny appellant's motion for rehearing, but grant its motion for clarification. On remand the trial court should consider and rule upon all remaining post-trial motions.
NOTES
[1] At the end of September, 1991, there was a highly publicized public meeting regarding the parking problem, which meeting was attended by Mr. Votypka and officers from Mizner Park. From that meeting, Mr. Votypka began to realize that there was not going to be as much parking available as he had been told. Appellant, however, did not pull out of the project because construction was already underway and equipment purchased, and it had already expended half to two-thirds of the renovation money, at least half of which investment would have been lost if it had pulled out then.

Around the middle of September, Mizner Park was busy, but not mobbed. Although Mr. Votypka was worried in September that the parking might not be as good as he earlier thought, he never expected to see what he saw over the holiday. As the season approached, the problem increased, finally to the point in December where there was hardly any place to park and impossible to park on the weekends.
[2] We agree with appellant that appellee's reliance on Tevini v. Roscioli Yacht Sales, Inc., 597 So.2d 913, 914 (Fla. 4th DCA 1992), rev. denied, 613 So.2d 9 (Fla. 1993), is misplaced, although for a different reason than that set out by appellant, which reason is not essential to this opinion.