COPE, J.
(concurring in part and dissenting in part).
Several counts of the amended complaint state a cause of action. We should remand for further proceedings.
I.
In 2005, the plaintiffs-appellants entered into pre-construction contracts to purchase units in a condominium called The Ivy, to be constructed by defendant-appel-lee Miami River, L.L.C. The buyers posted deposits. Subsequently the buyers requested cancellation of their contracts and return of their deposits. The developer refused.
The buyers filed suit alleging multiple causes of action. The developer moved to dismiss the amended complaint with prejudice. The trial court granted the motion with respect to all counts except count twelve, and entered a summary judgment on count twelve. The buyers have appealed.
II.
“The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts alleged to state a cause of action. For the purpose of passing upon a motion to dismiss the Court must assume all facts alleged in the complaint to be true.” Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla.1956). In considering the motion to dismiss, “[T]he court was required to resolve every reasonable conclusion or inference in favor of Appellants, as the non-moving party.” Meyers v. City of Jacksonville, 754 So.2d 198, 202 (Fla. 1st DCA 2000). The trial court “must accept [the] allegations as true, and may not speculate as to what the true facts may be or what facts may ulti *622 mately be proved in the trial of the cause.” Lopez-Infante v. Union Central Life Ins. Co., 809 So.2d 13, 15 (Fla. 3d DCA 2002).
Count one of the amended complaint alleged that the developer had violated the antifraud provision of the Florida Condominium Act by publishing false and misleading information. The statute provides protection for condominium purchasers as follows:
718.506 Publication of false and misleading information.—
(1) Any person who, in reasonable reliance upon any material statement or information that is false or misleading and published by or under authority from the developer in advertising and promotional materials, including, but not limited to, a prospectus, the items required as exhibits to a prospectus, brochures, and newspaper advertising, pays anything of value toward the purchase of a condominium parcel located in this state shall have a cause of action to rescind the contract or collect damages from the developer for his or her loss prior to the closing of the transaction.
§ 718.506(1), Fla. Stat. (2005) (emphasis added).
The amended complaint alleges:
11. At the time the contracts were entered into between Defendant MIAMI RIVER, LLC and the Plaintiffs, the condominium brochures and prospectuses advertised certain features the condominiums would possess.
12. The Plaintiffs relied on advertisements on Defendant MIAMI RIVER, LLC’s website www. theivymiami.com that THE IVY would include an exclusive “13.5 acre lushly landscaped oasis”, but instead the landscaped oasis is shared amongst two other condominiums. This false advertising misled the Plaintiffs to sign their respective contracts.
13. The Plaintiffs relied on advertisements on Defendant MIAMI RIVER, LLC’s website www. theivymiami.com that THE IVY would include meditation gardens and a marina, but the developer is delaying delivery of these amenities until after The Mint, currently an unfinished neighboring Condo, is completed. This false advertising misled the Plaintiffs to sign their respective contracts.
14. The Defendant MIAMI RIVER, LLC falsely advertised to Plaintiffs that THE IVY would include a fitness gym and a spa, but the developer unilaterally decided to move these amenities to The Mint condominium. This false advertising misled the Plaintiffs to sign their respective contracts.
15. As a result of these misleading publications by Defendant MIAMI RIVER, LLC, the Plaintiffs have a cause of action to rescind the contracts or collect damages from Defendant MIAMI RIVER, LLC for its losses prior to the closing of the transaction, pursuant to Florida Statutes § 718.506(1).
The Agreements (or relevant excerpts) are attached to the amended complaint.
For purposes of the motion to dismiss, the developer has assumed that paragraphs 12-14 each state an actionable fraud. The developer makes a generic argument, applicable to the entire amended complaint, that “Appellants make no claims of developer misconduct or some other legitimate grievance.” On the contrary, count one alleges fraud.
*623 The developer argues that the “Appellants simply filed their lawsuit to avoid their contractual obligations due to a slump in the real estate market.” The argument has no legal significance. The question is whether the amended complaint states a cause of action. The statute creates a remedy for false and misleading statements in advertising and promotional materials. If, in fact, the developer has violated the statute and the buyers satisfy the statutory elements, the buyers are entitled to statutory relief.
The developer argues that the Agreement between the parties negates the statutory cause of action. Paragraph 43 of the Agreement states in part, “Purchaser acknowledges that the primary inducement for him to purchase under this Agreement is the Unit, itself, and not the recreational amenities and other Common Elements.” This portion of the Agreement has no bearing on the statutory cause of action. The antifraud statute does not have a concept of “primary inducement” versus “secondary inducement.” Under the statute, a buyer who reasonably relies on materially false or misleading advertising and promotional materials has a cause of action.
The developer next argues that the cause of action is precluded because paragraph 42 of the Agreement, entitled “Representations,” states in part:
This Agreement contains the entire understanding between Purchaser and Seller, and Purchaser hereby acknowledges that the displays, architectural models, artist renderings and other promotional materials and brochures contained in the sales office and model suite are for promotional purposes only and may not be relied upon. Without limiting the foregoing, Purchaser acknowledges that brochures may discuss proposed amenities which will not be constructed.... Purchaser acknowledges that the Seller may modify the development plan for the Community, including modifications to the recreational facilities described in the Condominium Documents.
This part of the Agreement does not rule out the plaintiffs’ cause of action.
These contracts were pre-construction contracts. No building had been built. The only way that buyers could know what they were buying was by looking at the information provided by the developer. Paragraph 42 contains promises of future action.
What paragraph 42 cannot and does not do, however, is eliminate the buyer’s protection in cases of fraud. Section 718.506 is a remedial statute. The Florida Condominium Act states, “A provision of this chapter [718] may not be waived if the waiver would adversely affect the rights of a unit owner or the purpose of the provision....” § 718.303(2), Fla. Stat. (2005). A contractual provision is unenforceable where “it defeats the remedial provisions of a statute, and is thus contrary to public policy.” Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 299 (Fla. 4th DCA2005).
The allegation here is that the developer made material misrepresentations that this condominium would have 13.5 acres of grounds, whereas the grounds are shared with two other condominium buildings; that there would be a meditation garden and marina, but there are not; and that the building was to contain a gym and spa, but does not.
“An action for fraud ... must be based on a statement concerning a past or existing fact. However, a promise as to future conduct may serve as a predicate for a claim of fraud if such promise is made without any intention of performing or with the positive intention not to perform.” *624 27 Fla. Jur.2d Fraud and Deceit § 27 (2010) (footnotes omitted); see Home Seekers’ Realty Co. v. Menear, 102 Fla. 7, 135 So. 402, 402-03 (1931); Weldon v. Wyche, 863 So.2d 395, 396 n. * (Fla. 3d DCA 2003); Mejia v. Jurich, 781 So.2d 1175, 1177 (Fla. 3d DCA 2001); Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168, 172 (Fla. 4th DCA 1995); Capital Bank v. MVB, Inc., 644 So.2d 515, 521 (Fla. 3d DCA 1994); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367, 1372 (Fla. 4th DCA 1981).
As summarized in the standard jury instructions, the elements of a fraudulent misrepresentation are:
First, whether (defendant) [intentionally] made a false statement concerning a material fact;
Second, whether (defendant) knew the statement was false when [he][she][it] made it or made the statement knowing [he][she][it] was without knowledge of its truth or falsity;
Third, whether in making the false statement, (defendant) intended that another would rely on the false statement;
Fourth, whether (claimant) relied on the false statement; and
Fifth, whether (claimant) suffered [loss][injury][or][damage] as a result.
Fla. Std. Jury Instr. (Civ.) MI8.1 (footnote omitted).
In order to prevail on this claim, the plaintiffs must establish that the representation was untrue when made or, alternatively, there was a promise of future conduct which was made without any intention of performing, or with the positive intention not to perform. The quotation from paragraph 42 of the Agreement does not address this issue.
Count I states a cause of action.[3] Whether the alleged misrepresentations were material, and whether the plaintiffs reasonably relied on those representations, is not a matter which can be determined from the face of the amended complaint. Count I should not have been dismissed.
III.
In count II the plaintiffs requested a declaratory judgment that the Agreement is illusory, lacks mutuality of obligation, and is unenforceable. Paragraph 14 of the Agreement states:
14. Construction Specifications. The Unit and the Condominium will be constructed in substantial accordance (in Seller’s opinion) with the plans and specifications therefor kept in Seller’s construction office, as such plans and specifications are amended from time to time. Seller may make such changes in the plans and specifications that it deems appropriate at any time, to accommodate its in the field construction needs (as more fully discussed in this paragraph 14) and in response to recommendations or requirements of local, state or federal governmental or quasi-governmental agencies or applicable util *625 ity and/or insurance providers, and Purchaser agrees that any changes made in accordance with the foregoing shall not be deemed material in a manner which is adverse to the offering of the Unit. Such plans and specifications, as they are so amended, are referred to in this Agreement as “Seller’s Plans and Specifications”. Without limiting Seller’s general right to make changes, Purchaser specifically agrees that the changes described above and changes in the dimensions of rooms, patios and balconies, in the location of windows, doors, walls, partitions, utility (including, but not limited to, television and telephone) lead-ins and outlets, air-conditioning equipment, ducts and components, lighting fixtures and electric panel boxes, and in the general layout of the Unit and Condominium, may be made by Seller in its discretion and that such changes shall not be deemed material or adverse to Purchaser. In furtherance of the understanding and agreement stated above, Purchaser acknowledges and agrees that it is a widely observed construction industry practice for pre-construction plans and specifications for any unit or building to be changed and adjusted from time to time in order to accommodate on-going, “in the field” construction needs. These changes and adjustments are essential in order to permit all components of the Unit and the Building to be integrated into a well-functioning and aesthetically pleasing product in an expeditious manner. Because of the foregoing, Purchaser acknowledges and agrees that it is to Purchaser’s benefit to allow Seller the flexibility to make such changes in the Unit and the Condominium. Purchaser further acknowledges and agrees that (i) the plans and specifications for the Unit and the Condominium on file with the applicable governmental authorities may not, initially, be identical in detail to Seller’s Plans and Specifications, and (ii) because of the day-to-day nature of the changes described in this paragraph 14, the plans and specifications on file with applicable governmental authorities may not include some or any of these changes (there being no legal requirement to file all changes with such authorities). As a result of the foregoing, Purchaser and Seller both acknowledge and agree: The Unit and the Condominium may not be constructed in accordance with the plans and specifications on file with applicable governmental authorities. Without limiting the generality of paragraph 33, Seller disclaims and Purchaser waives any and all express or implied warranties that construction will be accomplished in compliance with such plans and specifications. Seller has not given and Purchaser has not relied on or bargained for any such warranties. In furtherance of the foregoing, in the event of any conflict between the actual construction of the Unit and/or the Building, and that which is set forth on the plans, Purchaser agrees that the actual construction shall prevail and to accept the Unit and Building as actually constructed (in lieu of what is set forth on the plans).
Purchaser understands and agrees that in designing the Condominium, the stairwells within the Condominium Property were intended solely for ingress and egress in the event of emergency and as such are constructed and left unfinished solely as to be functional for said purpose, without regard to the aesthetic appearance of said stairwells. Similarly, the garage and utility pipes serving the Condominium are intended solely for functional purposes and as such will be left unfinished without regard to the aesthetic appearance of *626 same. The foregoing is not intended to prohibit the use of the stairwells, garage, and utility pipes for any other legal purpose. Further, Purchaser hereby acknowledges and agrees that sound transmission in a high-rise building such as the Condominium is very difficult to control, and that noises from adjoining or nearby Units and/or mechanical equipment can often be heard in other Units. Without limiting the generality of paragraph 14, Seller does not make any representation or warranty as to the level of sound transmission between and among Units and the other portions of the Condominium Property, and Purchaser hereby waives and expressly releases any such warranty and claim for loss or damages resulting from sound transmission. Lastly, Purchaser understands and agrees that there are various methods for calculating the square footage of a Unit, and that depending on the method of calculation, the quoted square footage of the Unit may vary by more than a nominal amount. Additionally, as a result of in the field construction and other permitted changes to the Unit, as more fully described in this Section, actual square footage of the Unit may also be affected. Accordingly, during the pre-closing inspection, Purchaser should, among other things, review the size and dimensions of the Unit. By closing, Purchaser shall be deemed to have conclusively agreed to accept the size and dimensions of the Unit, regardless of any variances in the square footage from that which may have been disclosed to Purchaser at any time prior to closing, whether included as part of Seller’s promotional materials or otherwise. Without limiting the generality of any other provision of this Agreement, Seller does not make any representation or warranty as to the actual size, dimensions or square footage of the Unit, and Purchaser hereby waives and expressly releases any such warranty and claim for loss or damages resulting from any variances between any represented or otherwise disclosed square footage and the actual square footage.
Purchaser further agrees and understands that trees and landscaping which are located on portions of the Condominium Property may be removed to accommodate construction. Seller does not guaranty the survival of any trees and landscaping which are left or planted on any portion of the Condominium Property-
Subject to the provisions herein and in the Declaration, Seller will construct the Condominium and the infrastructure needed for construction of the roads, water systems, sewer system, electrical system and telephone system.
The agreements and waivers of Purchaser contained in this paragraph will survive (continue to be effective after) closing.
(Emphasis added).
Based on the foregoing language, it is difficult to see that the developer has actually committed itself to do anything specific. According to the Agreement, the developer can unilaterally modify the dimensions, square footage, and layout of the condominium units at will, and need not even reflect those changes on the plans and specifications. The question of whether the developer has substantially complied with its obligations is a matter of “Seller’s opinion.” Counts II and III state a cause of action. See Rosenberg v. Lawrence, 541 So.2d 1204, 1206 (Fla. 3d DCA 1988). “Likewise, a promise to erect a building whose dimensions and plans were not specified ... has been held too indefinite for enforcement.” 1 Richard A. Lord, Williston on Contracts § 4:26, at *627 786 (4th ed. 2010).[4],[5] “[A] reservation in either party of a future unbridled right to determine the nature of the performance ... has often caused a promise to be too indefinite for enforcement.” Id. § 4.21, at 644-48.
IV.
The amended complaint alleges violations of the Interstate Land Sales Act (“ILSA”). Plaintiff Henao is entitled to reversal of the order dismissing her claim. Her counsel sent a demand letter to the developer (attached to the amended complaint) within the two-year period for raising an ILSA claim, and the letter sufficiently raised the ILSA issue.[6]
ILSA “requires the consumer to be furnished with a property report ‘in advance of the signing of any contract or agreement.’ ” Richard Linquanti, Aspects of the Interstate Land Sales Full Disclosure Act, 44 Real Prop. Tr. & Est. L.J. 441, 479 (2009). “[Djevelopers should separate the delivery of the property report from the contract signing by at least a sufficient amount of time for the purchaser to have the opportunity to read the property report.” Id. Plaintiff Henao has alleged in count VIII that the developer failed to provide the property report in advance and therefore the developer breached this provision.
ILSA also requires that “the contract provide a legal description in a form capable of recording.” Id. at 488. This “can be a problem if the condominium declaration has not yet been recorded and the contract description refers to the unit by reference to the declaration.” Id. In count VII, plaintiff Henao has alleged a breach of this ILSA requirement. It can *628 not be ascertained from the face of the amended complaint and Agreement whether the developer complied with ILSA on this point. A determination of this issue will require expert testimony. This count of the amended complaint likewise states a cause of action and should not have been dismissed.
V.
The dismissal order should be reversed with respect to the counts discussed above. It follows that the summary judgment regarding attorneys’ fees should also be reversed. I concur in affirming on the remaining counts.

. Although the developer has not raised the point, paragraphs 13 and 14 both allege that after the Agreements were entered into, the developer delayed delivery of the meditation gardens and marina (paragraph 13) and decided to move the fitness gym and spa to The Mint condominium (paragraph 14). As written, paragraphs 13 and 14 complain about conduct occurring after the signing of the Agreements and do not contain allegations that would constitute an actionable fraud. The developer apparently made the tactical judgment not to challenge these counts for deficient pleading. Had the developer done so, the plaintiffs would have been granted leave to amend. Because the developer has not challenged the legal sufficiency of the fraud allegations, for present purposes it must be assumed that the elements of a cause of action under section 718.506 have been sufficiently alleged.

. Whether the problem was cured by part performance prior to the request for rescission cannot be determined from the amended complaint. See id. at 650-55.

. The Florida Bar standard form is a striking contrast to the contract at issue here. The Florida Bar form provides:
CONSTRUCTION. SELLER hereby agrees to construct on and within the unit one model single-family dwelling (the "dwelling”) substantially in accordance with SELLER’S plans and specifications, subject to the availability of labor and materials. The temporary or permanent certificate of occupancy from the applicable governmental authority shall be final with respect to completion and compliance. The estimated latest date of completion of construction of the dwelling is SELLER agrees that it will use its best efforts to complete construction by that date. BUYER acknowledges and agrees that that completion date is not guaranteed and is not the essence of this contract. Under no circumstances shall SELLER be liable for any damages or inconvenience caused to BUYER because of the failure to complete construction by that date, regardless of the cause for the delay. Notwithstanding anything contained herein to the contrary, SELLER unconditionally agrees to' complete the unit within a period of two years from the date of this contract. This two-year period, however, may be extended due to acts of God, or any other event constituting an impossibility of performance under Florida law. With respect to SELLER’S two-year completion obligation, nothing contained herein shall restrict BUYER’S right to seek specific performance or any other remedy if BUYER is entitled to these remedies by operation of law.
SELLER reserves the right to make minor architectural, structural, or design modifications or changes in the dwelling or common elements as it deems necessary or desirable, and BUYER agrees to close notwithstanding these modifications and changes, as long as the modifications and changes do not alter the overall size or integrity of the unit and any changes are such that the materials are at least of equal quality.
The Florida Bar, Florida Condominium and Community Association Law § 7.16 (2007).

. The letter sent by plaintiff Law-Yue (attached to the amended complaint) was not sufficient to raise an ILSA claim.