Jerry D. GROVE, Kathy M. Grove and Leo Willick, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. 4–97–CV–90224.

United States District Court, S.D. Iowa, Central Division.

March 16, 1998.

Roger T. Stetson, Des Moines, IA, for Plaintiffs.

Lawrence P. McLellan, Des Moines, IA, for Defendant.

## ORDER

PRATT, District Judge.

This matter comes before the Court on defendant's Motion to Dismiss plaintiffs' Complaint. Defendant filed such motion on June 26, 1997. Plaintiffs filed their Resistance on August 27, 1997 and defendant filed a reply on October 17, 1997. A hearing was held on March 10, 1998. At the outset, the Court would like to commend the attorneys for both parties on their briefs and oral arguments. As Chief Judge Arnold states in *United States v. Samuels*, 808 F.2d 1298 (8th Cir.1987), "[c]ounsel almost always know a great deal more about their cases than [the court does]." *Id.* at 1301 (Arnold, J., Concurring). In the instant case, the attorney's communication of such knowledge was particularly helpful and informative.

## I. BACKGROUND

### A. *General Allegations*

The plaintiffs filed a eight count class action complaint[1] on April 4, 1997, seeking redress for an allegedly fraudulent scheme and common course of deceptive sales practices perpetrated by the Principal Mutual Life Insurance Company, formerly known as Bankers Life Company, [hereinafter "Principal"]. Plaintiffs claim that Principal agents deceived and induced them and thousands of other policy holders to purchase insurance policies through the use of false and misleading policy illustrations, marketing materials, and sales presentations. At the time they made these representations, plaintiffs allege, Principal knew they were false.

Plaintiffs assert, among other things, that Principal made statements and presented computer generated sales illustrations which depended on deceptive actuarial assumptions and undisclosed material facts. They claim that defendants fraudulently concealed the *presently known fact* that the assumptions upon which the performance of the "vanishing premium" policies were based could not be supported by Principal's *current* experience.[2] Further, plaintiffs allege that Principal agents concealed and/or misrepresented that premiums would vanish on a date certain.[3] Plaintiffs also claim that from 1984 on, Principal knew that the dividend, interest, and investment return assumptions essential to its illustrations could not and were not even projected to be maintained. Nonetheless, they fraudulently used these illustrations to induce plaintiffs and other class members to purchase insurance policies.

The policy illustrations also concealed the fact that even if out-of-pocket premiums did "vanish" on the specified date, they may reappear later if some variables were altered.[4]

Finally, plaintiffs assert that they understood and relied upon the sales presentations as a representation by the Principal agents of how their policies would work.

In the motion to dismiss, Principal argues that as a matter of law plaintiffs' claim should be dismissed on the following basis: (a) the Groves lack standing; (b) plaintiffs' fraud and negligence claims are barred by the applicable statute of limitations; (c) plaintiffs fail to properly state a claim for fraud; (d) plaintiffs cannot recover on their claims for breach of fiduciary duty; (e) plaintiffs have not stated a claim for breach of contract; (f) plaintiffs fail to properly state a claim for negligence and negligent misrepresentation; and (g) plaintiffs' claims for equitable relief fail to state cognizable causes of action.

### B. *Specific Complaints of the Named Plaintiffs*

The Groves claim that in 1992, a Principal agent approached them and induced them to purchase an "Adjustable Life" insurance plan by mischaracterizing it as a retirement plan and/or investment plan which had a premium that would vanish in ten years. The Groves further allege that the Principal agent used a computer-generated policy illustration to confirm his misrepresentations. Relying on the representations of this agent, the Groves

---

1. The Complaint alleges the following:
 Count I—Fraud, Fraudulent Concealment and Deceit;
 Count II—Fraudulent Inducement;
 Count III—Breach of Fiduciary Duty;
 Count IV—Breach of Express and Implied Contract;
 Count V—Negligence;
 Count VI—Negligent Misrepresentation;
 Count VII—Declaratory and Injunctive Relief; and
 Count VIII—Reformation.

2. In ¶ 40 of the Complaint, plaintiffs allege that in it's 1987 Annual Report, Principal stated "[t]here is substantial probability that dividends illustrated on new or existing business cannot be supported for at least two years because of ex-

pected deterioration in experience. In particular, our investment generation approach to dividends would pay dividends lower than illustrated in a declining interest rate environment." Further, plaintiffs allege in this same paragraph that "Principal misrepresented and/or failed to disclose the effects that such decreased dividends and interest rates had on the performance of its Policies, including the vanish date."

3. In ¶ 41 of the Complaint, plaintiffs allege that the illustrations used to sell policies were cast in a format intended to deceive plaintiffs, by indicating that premiums would vanish on a date certain when in reality the only thing that might ever vanish was out-of-pocket premiums.

4. See ¶¶ 44, 45, 46 of the Complaint.

purchased the Principal policy. They claim further that in 1995, they learned that Principal was taking unauthorized loans from another policy they owned to pay premiums on this policy.

Willick, a long-standing Principal insured owning a $20,000 policy, alleges that in 1984, a Principal insurance agent approached and induced him to purchase a second policy based on misleading and/or inaccurate sales presentations. The agent allegedly stated that Willick's old policy was "no good" because the "dividends were doing nothing." Further, he indicated that the dividends from Willick's 1966 twenty thousand dollar policy would be sufficient to pay the premiums on the second policy for several years. In 1988, the Principal agent again visited Willick and on this occasion stated that "lots of dividends" had accumulated in the new policy and encouraged Willick to use these dividends to increase the face amount of the second policy to $51,105. In 1992, Principal notified Willick that additional out-of-pocket premiums were required. He paid these out-of-pocket premiums for two years and then let his policy lapse.

## II. LEGAL STANDARD

█ In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court "is constrained by a *stringent standard* .... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [5] *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)); *see also Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). In addition, the allegations of the complaint must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The complaint must be liberally construed in the light most favorable to the plaintiff. *Fusco*, 676 F.2d at 334. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the *un-*

*usual* case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* (citing *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978)) [emphasis added].

In *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Supreme Court articulated the test as follows:

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Id.* at 236, 94 S.Ct. 1683.

## III. ANALYSIS

### A. *Class Certification*

█ The Court notes that this case was filed as a class action but there has been no certification of a class. As a general rule, a court should make a determination of whether the complaint is appropriate for class certification "[a]s soon as practicable after the commencement of [such] an action," Fed. R.Civ.P. 23(c). This determination should generally be made prior to consideration of any dispositive motions. See *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 947 (7th Cir.) (en banc), cert. denied, 493 U.S. 807, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989). In the present case, however, the parties have informally informed the Court that they have not yet completed discovery on this issue and thus desired that it not be determined as of

---

5. The Court notes that the Supreme Court of Iowa, likewise, "[does] not recommend filing a motion to dismiss [a claim] the viability of which is in any way debatable; [n]either [does it] en- dorse sustaining such motions, even where the ruling is eventually affirmed." *See Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991).

yet. Thus, the court will consider the motion to dismiss prior to certification.

### B. *Choice–Of–Law*

As a threshold matter, the Court must determine what substantive law governs plaintiff's claims. When jurisdiction is based on diversity of citizenship, a federal district court is bound to apply the choice-of-law rules of the state in which it sits. *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir.1994) (citing *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991)). As jurisdiction in this case is based on diversity, this Court is required to follow Iowa's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Iowa has adopted the Second Restatement of Conflicts as its choice-of-law provision. *Cole v. State Auto. & Casualty Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980).

In *contract* cases, following the Second Restatement, Iowa applies the law of the state with the most significant relationships or interests in the litigation. Restatement (Second) of Conflicts of Law § 188(1) (1971); *Cole*, 296 N.W.2d at 781. "The basic premise of the most significant relationships theory is that the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

■ For claims of *fraud* or misrepresentation, Iowa applies the law of the state where the false representations were made and received, unless "with respect to a particular issue, some other state has a more significant relationship to the transaction." Restatement (Second) of Conflicts of Law § 148(1) (1971).

■ For claims of *negligence,* Iowa courts have generally opted to follow the law of the state where the claimed tort occurred. See *Fuerste v. Bemis*, 156 N.W.2d 831, 832 (Iowa 1968); *Fabricius v. Horgen*, 257 Iowa 268, 278–279, 132 N.W.2d 410, 416 (1968).

■ The Court has found no Iowa cases on the choice-of-law rule as applied to *breach of fiduciary duty* cases. However, the Court assumes a similar "most significant relationship" analysis would exist.

Pursuant to the Restatement (Second) of Conflicts of Law, to determine which state has the most significant relationship to the litigation, the following contacts should be considered: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance, (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationalities, place of incorporation, and place of business of the parties. Id. at § 188(2) (1971)

In the instant case, the Court is persuaded by plaintiffs' argument that Iowa law should apply. Although it is clear that both named plaintiffs were residents of Florida when they negotiated and contracted for the purchase of Principal insurance policies, the Court finds that the other three factors suggest that Iowa has more significant contacts with all claims in this litigation.

Neither party disputes that Principal is incorporated in, and has it's principal place of business in Iowa; the insurance policies are underwritten in Iowa; and the sales presentation materials were designed and prepared in Iowa. Additionally, plaintiffs allege that Iowa is the state from which the alleged nationwide fraudulent scheme was orchestrated. The Court finds that any alleged fraud or negligence occurred in Iowa. Further, although Willick is still a resident of Florida, the Groves are no longer domiciled there; they are now citizens and residents of Louisiana. Because the two named plaintiffs currently reside in separate states, the Court is further persuaded that Iowa, as the state of Principal's citizenship, has the more significant contacts with the litigation.[6] Finally, the Court finds that the place of performance of the contract and the location of the subject matter of the contract is more likely to be in Iowa. Any money collected from the insureds is likely to be kept at banks in the state of Iowa, and any money paid out as insurance proceeds will be paid from Iowa. Following the Restatement (Second) of Conflicts, it is

6. The Court also believes that the fact that this action has been filed as a class action which potentially could include plaintiffs from many of the fifty states, further supports its determination that Iowa has the most significant contacts.

clear to this Court that Iowa has the most significant relationships to all of the claims in the litigation. Finally, the Court notes that Iowa has a significant interest in the litigation because it has an interest in protecting any of its citizens who purchase life insurance here and providing a fair trial to its citizens who are incorporated here. See *Cole*, 296 N.W.2d at 782. Therefore the Court will apply Iowa law.

### C. *Principal's Argument That The Groves Lack Standing*

 It is well settled that in order to bring any action in a federal district court, the plaintiffs must have standing. *Lujan, Secretary of Interior v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, (1992). In order to have standing: (a) the plaintiffs must have suffered an "injury in fact" which is actual or imminent; (b) there must be a causal connection between the injury and the alleged conduct of the defendant; and (c) the relief sought must be capable of redressing the injury. *Id.* (cites omitted). At the pleading stage, however, plaintiffs need only generally allege injury. "On a motion to dismiss [the Court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 560–561, 112 S.Ct. 2130, (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)).

 Principal argues that the Groves have no standing to bring this action as they allege no actual or imminent harm, and therefore this Court lacks subject matter jurisdiction. See *Friedmann v. Sheldon Community School District*, 995 F.2d 802, 803 (8th Cir.1993). The Court disagrees. Among other things, the Groves have pled that as policy holders they were injured by Principal through the taking of unauthorized loans against their John Hancock policy to pay Principal premiums. The Court finds that this allegation, alone, is a sufficient allegation of injury in fact to survive a motion to

dismiss. See *United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254, (1973) (an identifiable trifle is enough for standing). Further the Court notes that the other two requisite elements of standing have been met: there is a causal connection between the injury and the alleged conduct of the defendant; and the relief sought by plaintiffs is capable of redressing the alleged injury. Therefore, the Court denies Principal's standing challenge.

### D. *Principal's Argument That Plaintiff's Fraud And Negligence Claims Are Barred By the Applicable Statute of Limitations*

 Principal argues that plaintiff's fraud and negligence claims are barred by the applicable statute of limitations and therefore must be dismissed as a matter of law. As stated above, with Iowa as the chosen forum, this Court is bound to apply Iowa's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Iowa's choice of law rules generally require the application of local law to procedural matters.[7] *Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987) (citing *Brooks v. Engel*, 207 N.W.2d 110, 113 (Iowa 1973)); see also *Drudge v. Overland Plazas Co.*, 531 F.Supp. 210, 212 (S.D.Iowa 1981) (applying Iowa limitations law, including Iowa's borrowing statute, in a diversity action), aff'd, 670 F.2d 92 (8th Cir.1982). Thus, regardless of whether the Court found Iowa or Florida substantive law applicable to this action, Iowa law must be used for the statute of limitation questions as such are traditionally considered procedural rather than substantive. *See Harris v. Clinton Corn Processing Co.*, 360 N.W.2d 812, 814 (Iowa 1985).

### 1. *Fraud*

Principal argues that plaintiff's claim of fraud is barred by Chapter 614 of the Iowa Code. Plaintiffs argue that they are not

---

**7.** The Court notes that it should apply Iowa's statute of limitations unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and

the occurrence. *Great Rivers Cooperative of Southeastern Iowa v. Farmlane Industries, Inc.*, 934 F.Supp. 302, 306 (S.D.Iowa 1996) The Court, however finds that neither of these circumstances are present in this action.

barred from bringing this action because the applicable statute of limitations was tolled pursuant to Iowa Code § 614.4.

Section 614.1 of the Iowa Code provides, in pertinent part:

Actions may be brought within the times herein limited . . .

(4) Unwritten contracts-injuries to property-fraud-other actions . . . [T]hose brought . . . for relief on the ground of fraud *in cases heretofore solely cognizable in a court of chancery,* and all other actions not otherwise provided for in this respect, within five years . . . [emphasis added]

Section 614.4 of the Iowa Code provides:

In actions for relief on the ground of fraud or mistake . . . the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved.

■ Sections 614.1 and 614.4 must be read in conjunction with each other. Such a reading indicates that actions for relief on the ground of fraud, which might be pursued *either at law or in equity,* must be commenced within five years after the perpetration of the fraud as they are not within the contemplation of § 614.4. *See i.e. Higbee v. Walsh,* 229 Iowa 408, 421, 294 N.W. 597; *McGrath v. Dougherty,* 224 Iowa 216, 223, 275 N.W. 466. Since the present cause of action is brought in both law and equity, it would seem that the applicable statute of limitations is five years.

The Court finds, however, that there is a line of cases holding the five year statute of limitations for fraud actions brought at law may be tolled where the defendant has been guilty of some act of affirmative "fraudulent concealment."[8] See *Cole v. Hartford Accident & Indem. Co.,* 242 Iowa 416, 426, 46 N.W.2d 811, 817 (1951) *(citing District*

*Township of Boomer v. French*[9], 40 Iowa 601, 603 (Iowa 1875)); *see also Pullan v. Struthers,* 201 Iowa 1179, 207 N.W. 235; *City of Pella v. Fowler,* 215 Iowa 90, 94, 244 N.W. 734. Generally, *in addition to* the original act of fraud, the doctrine of fraudulent concealment[10] requires proof of affirmative concealment by defendant that prevents plaintiffs from discovering the fraud. *Woods v. Schmitt,* 439 N.W.2d 855, 862 (Iowa 1989) (citing 54 C.J.S. Limitation of Actions, § 90(c), at 130–31 (1987)). However, there appear to be exceptions to this requirement which are discussed below. Further, pursuant to this doctrine, plaintiffs must allege that even with the exercise of due diligence, they did not discover the fraud. *Cole v. Hartford Accident & Indem. Co.,* 242 Iowa 416, 426, 46 N.W.2d 811, 817 (1951).

In *Cole,* the Iowa Supreme Court held that:

[mere] silence of a defendant does not amount to fraudulent concealment . . . unless a fiduciary relation exists between plaintiff and defendant, imposing upon the later the duty to reveal to the former all facts which might affect his interest. Where such fiduciary relation exists, defendant's failure to reveal facts he is under a duty to disclose takes the place of the affirmative acts of concealment required when there is no such fiduciary relation.

*Id.* at 426–27, 46 N.W.2d 811. In that case, the Iowa Supreme Court concluded that the doctrine of fraudulent concealment had no application to the facts as no fiduciary relationship existed between plaintiff and defendant.

■ In the present case, the Court finds that the plaintiffs sufficiently allege the existence of a fiduciary relationship between Principal and themselves. See Section III(F), *infra.* The Court believes plaintiffs'

---

8. The Court notes that the fraudulent concealment doctrine is entirely distinct concept from the discovery rule. *Chrischilles v. Griswold,* 260 Iowa 453, 461 150 N.W.2d 94, 100 (Iowa 1967).

9. In *District Township of Boomer,* an action by a school district to recover money damages from its treasurer, the Iowa Supreme Court tolled the five year statute of limitations because the defendant had concealed his fraud by fictitious entries

on the treasury books and other fraudulent acts. *Id.* at 603.

10. The doctrine of fraudulent concealment states that where a defendant prevented the plaintiff from discovering the original act of fraud by actual fraudulent concealment, the statute of limitations would begin to run only when the fraud was or should have been discovered.

allegation that Principal failed to reveal facts they were under a duty to disclose [11] sufficient to "take[ ] the place of the affirmative acts of concealment required when there is no such fiduciary relation." See *Cole*, 242 Iowa at 426–27, 46 N.W.2d 811; *see also Pride v. Peterson*, 173 N.W.2d 549, 554 (Iowa 1970). Therefore plaintiffs meet the first requirement for the application of the fraudulent concealment doctrine.

Further the Court finds that plaintiffs allege facts showing they did not discover their cause of action for claimed fraud when they received the policies due to the "artful drafting." As the Iowa Supreme Court recognized in *C & J Fertilizer Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169 (Iowa 1975), "We would be derelict in our duty to administer justice if we were not to judicially know that modern insurance companies have turned to mass advertising to sell 'protection.' A person who has been incessantly assured a given company's policies will afford him complete protection is unlikely to be wary enough to search his policy to find a provision nullifying his ... protection ..." *Id.* at 178. Thus, plaintiffs meet the second requirement for the application of the fraudulent concealment doctrine.

■ Having determined that the plaintiffs have properly alleged the existence of both of the requisite conditions for the application of this doctrine, the Court finds that the question of when, through reasonable diligence, plaintiffs should have discovered the fraud is an issue of fact, which is not appropriate for a motion to dismiss. Therefore, the Court will not sustain a motion to dismiss on this ground.

### 2. *Negligence*

■ Principal also argues that plaintiffs' claim of negligence is time barred. Plaintiffs again contend that they are not barred from bringing this action because the applicable statute of limitations was tolled until they discovered the wrongful act. Under Iowa law, an action for negligence must be brought within two years. Iowa Code § 614.1(2) (1997). Generally, under the discovery rule, a cause of action for negligence does not accrue until the existence of a harm has been established and the injured party knows or should know of either the injury or the negligent act. See *Chrischilles v. Griswold*, 260 Iowa 453, 461 150 N.W.2d 94, 100 (Iowa 1967); *see also Hasbrouck v. St. Paul Fire and Marine Ins. Co.*, 511 N.W.2d 364, 367 (Iowa 1993). The discovery rule protects plaintiffs who were "unaware of the accrual of a claim and could not have been aware of it in the exercise of reasonable diligence." [12] *Chrischilles*, 260 Iowa at 461, 150 N.W.2d at 100.

The relevant question, then, is when plaintiffs knew or should have known of Principal's alleged wrongful act. Principal claims that plaintiffs should have known of the alleged wrongful act as soon as they received their insurance policies. Plaintiffs claim that the terms of the policy did not disclose the discrepancies; rather the policy was "artfully drafted to avoid revealing" such misrepresentations. The Court finds that question of when plaintiffs should have known of the alleged wrongful act is an issue of fact. Therefore the plaintiffs are entitled to an opportunity to offer evidence on this issue. The Court will not sustain a motion to dismiss on this ground.

### E. *Principal's Argument That Plaintiff's Fail to State A Claim For Fraud (Counts I and II)*

In it's motion to dismiss, Principal asks the Court to dismiss plaintiffs' fraud claims because plaintiffs purportedly fail to: (1) allege any misrepresentations of existing fact; (2) properly allege scienter; and (3) establish justifiable reliance as to the Groves. In or-

---

11. See, generally, ¶¶ 88–94 of the Complaint. For example, plaintiffs allege, "Principal Mutual was well aware ... that the declining dividends and associated interest rates on its Policies would significantly extend the 'vanish year.' However, Principal Mutual failed to notify Plaintiffs and Class members at the point of sale *and thereafter intentionally concealed* this fact from its policyholders." Complaint ¶ 92.

12. The rule "is applied in [certain] cases to prevent the unfairness which would result from assuming a plaintiff was aware of facts which were 'unknown and inherently unknowable.' " *LeBeau v. Dimig*, 446 N.W.2d 800, 802 (Iowa 1989).

der to properly respond to these contentions, the Court finds it important to discuss the common law cause of action for fraud and the federal law requirement of pleading with particularity.

### 1. *Specificity of Pleadings*

When a federal court hears a diversity case, although the court applies the applicable state substantive law, the Federal Rules of Civil Procedure generally govern. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140–41, 14 L.Ed.2d 8 (1965); 2 Moore's Federal Practice § 9.03(1)(E) (Matthew Bender 3d ed.). Therefore, in accordance with Fed.R.Civ.P. 9(b), the Court must decide whether plaintiff's complaint averring fraud is "stated with particularity." When pleading fraud, plaintiffs cannot simply make conclusory allegations. See *Commercial Prop. Invs., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir.1995).

■■■■ To determine whether the claim was pled properly, the Court must look at the following circumstances: the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud. *Id.* at 644 (citing *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). A review of plaintiffs' Complaint illustrates that plaintiffs named the Principal agents they dealt with; specifically set forth detailed allegations of false statements and representations allegedly made to them; indicated the time frame in which they learned of the alleged fraud; stated where the original action of fraud occurred; and requested damages for money that they gave up as a result of the alleged fraud. Principal knows the nature of the claims against them and the grounds on which they are based. Thus, the Court finds plaintiffs sufficiently complied with the requirements of Rule 9(b).

### 2. *Essential Elements of Fraud*

The essential elements of a fraudulent representation for which relief can be had are: (1) a false statement concerning an existing material fact was made; (2) Principal knew that the representation was false; (3) Principal intended that the representation induce plaintiffs' reliance; and (4) injury resulted to plaintiffs after acting in reliance on the misrepresentation. *Carlson v. Vondrak*, 555 N.W.2d 238, 241 (Iowa App.1996); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996); *Phoenix v. Stevens*, 256 Iowa 432, 436, 127 N.W.2d 640 (Iowa 1964).[13]

■■■■ Plaintiffs' claims of fraud are premised primarily on the allegation that Principal represented that the premiums paid by plaintiffs on their policies would vanish on a date certain. Principal contends that such representations are not actionable as fraud because they were not representations of fact, but rather were mere projections. Additionally, Principal contends that reliance on such representation was not justified.

■■■■ The Court agrees with Principal that, mere opinions, judgments or projections are not actionable. See *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 183 (citing 37 C.J.S. Fraud § 10(a)) (Iowa 1970).[14] However, where a statement, in a business transaction, can be viewed as coming from one with superior knowledge of the subject-matter and is made to induce the listener to rely on it, such statement may be deemed a statement of fact rather than opinion. See *Grahek v. Voluntary Hospital Coop. Ass'n*, 473 N.W.2d 31, 35 (Iowa 1991); *see also* Restatement (Second) of Torts § 525 (1979)[15] (which permits recovery for fraud where one makes a misrepresentation of law for the purpose of inducing another to act and the other's action in reliance causes pecuniary loss).[16] In this case, plaintiffs allege

---

**13.** See also *Chino Elec., Inc. v. United States Fidelity & Guar. Co.*, 578 So.2d 320, 322 n. 4 (Fla. 3d DCA 1991); *Lance v. Wade*, 457 So.2d 1008 (Fla.1984); *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985); *Amazon v. Davidson*, 390 So.2d 383, 385 (Fla. 5th DCA 1980).

**14.** See also *Chino*, 578 So.2d at 323; *Thor Bear, Inc. v. Crocker Mizner Park Inc.*, 648 So.2d 168, 172 (Fla. 4th DCA 1994).

**15.** Comment (b) to section 525 defines "misrepresentation" as not only words spoken or written, but any other conduct which amounts to an assertion not in accordance with the truth.

**16.** *Thor Bear*, 648 So.2d at 172; *Amazon* 390 So.2d at 386; *Travelodge Intern., Inc. v. Eastern Inns. Inc.*, 382 So.2d 789, 791 (Fla. 1st DCA 1980)

that Principal agents, who are professionals having vastly superior knowledge,[17] deliberately manipulated actuarial assumptions to generate illustrations that depicted a policy performance they knew would not occur.[18] Principal's arguments that Willicks failed to allege that any representations made to him were false, and that the Groves failed to allege misrepresentation of an existing fact are without merit. These arguments presume that the Court should ignore the paragraphs of the Complaint which relate to allegations of the entire putative class.[19] The Court agrees with plaintiffs that such allegations are, by their terms, made applicable to the class and the named plaintiffs. Thus, the Court finds that both named plaintiffs have sufficiently alleged that Principal made false statements regarding existing material facts with the intent to induce plaintiffs to rely on such statements.

Plaintiffs also included many allegations related to scienter in the Complaint. For example, they allege that Principal continued to promote "vanish years" in 1988, despite disclosure in 1987 that its illustrated dividends could not be supported.[20] Additionally, they allege that Principal knew the premiums would not actually vanish and that the performance of the company's life products was volatile.[21] These allegations, along with several others in the complaint, are sufficient to properly allege scienter.

■ Plaintiffs have also sufficiently alleged that they justifiably relied on these representations to their detriment. Under Iowa law, insureds have a right to rely on their insurance agents' representations and this is what plaintiffs allege that they did.[22] Principal's contention that the Groves "cannot establish" justifiable reliance goes beyond the scope of a motion to dismiss. At this stage, the Court's role is to review the pleadings, not to weigh the evidence to determine if plaintiffs have sufficient proof of any elements of their claims. Plaintiffs have

clearly alleged that they justifiably relied on the alleged misrepresentations of Principal and therefore their complaint survives the motion to dismiss.

The Court finds Plaintiffs have alleged all of the proper elements of fraud. As stated above, on a motion to dismiss, the court's "task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683. On the claim of fraud, the Court finds that plaintiffs are entitled to offer support.

F. *Principal's Argument That Plaintiff's Cannot Recover on Their Claims For Breach of Fiduciary Duty (Count III)*

■ In Count III of the Complaint, plaintiffs allege that Principal held a fiduciary relationship with them and breached such duty by omitting, concealing and failing to disclose numerous material facts pertinent to their decision making. Principal contends that plaintiffs have failed to state a breach of fiduciary duty claim because the relationship between an insurer and its insured is "purely contractual." Plaintiffs argue that Principal's status as a mutual insurer gives rise to a fiduciary duty. Further, plaintiffs argue that because this case involves "vanishing premium" policies which are among the most complicated insurance products marketed, a fiduciary relationship was established.

Clearly, Iowa courts have recognized that insurers have duties to insureds beyond those obligations explicitly stated in their insurance contracts. See *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). Also the Court finds that Iowa courts have specifically recognized a fiduciary duty of insurer to insured in certain situations. See i.e. *North Iowa State Bank v. Allied Mut. Ins. Co.*, 471 N.W.2d 824 (Iowa 1991) (holding an insurer has a fiduciary duty to represent the in-

---

17. See Complaint ¶ 36.

18. See i.e. Complaint ¶¶ 7, 11, 31, 38, 48, 49, 58, and 61.

19. See i.e. Complaint ¶¶ 49, 58, and 61.

20. See Complaint ¶ 40

21. See Complaint ¶¶ 7, 31

22. See *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 905 (Iowa 1973); *Quinn v. Mutual Benefit Health & Acc. Ass'n*, 244 Iowa 6, 55 N.W.2d 546, 550 (1952); *See also Randolph v. Mitchell*, 677 So.2d 976, 978 (Fla.App.1996); *Peninsular Life Ins. Co. v. Wade*, 425 So.2d 1181, 1183–84; See i.e. Complaint ¶¶ 116, 122.

sured's position against a third party); *Wierck v. Grinnell Mut. Reinsurance Co.,* 456 N.W.2d 191, 194–95 (Iowa 1990) (holding an insurer owes a fiduciary duty to the insured to act responsibly in settlement negotiations)[23] However, Iowa courts have also found that no fiduciary relationship exists in other situations. *See i.e. Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W.2d 633, 635 (Iowa 1984) (holding that no fiduciary relationship exists in a casualty insurance situation when the insured brings a policy claim directly against the insurer). This case presents facts which are distinct from all of the above mentioned cases.

■ The Court finds that whether a fiduciary duty exists is not necessarily inherent in the insurer/insured relationship; rather such a determination is fact specific. *See Anderson v. Boeke,* 491 N.W.2d 182, 188 (Iowa Ct.App.1992) (citing *Kurth v. Van Horn,* 380 N.W.2d 693, 696 (Iowa 1986) ("Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case.")); see also 70 A.L.R.3d 1344, 1347–48 (1976).

As there appears to be no reported Iowa cases which deal with precisely the fact pattern that arises in this case, the Court will analyze the facts in connection with the general principals of "fiduciary duty" as applied by courts in Iowa. "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Anderson,* 491 N.W.2d at 188 (citing Restatement (Second) of Torts, § 874, comment a, at 300 (1979)).

"A fiduciary [relationship] arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other." *Kurth,* 380 N.W.2d at 695–96, (citing Black's Law Dictionary 564 (5th ed.1979)).

"Some of the indicia of a fiduciary relationship include ... the exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another." *Anderson,* 491 N.W.2d at 188 (citing *Irons v. Community State Bank,* 461 N.W.2d 849, 852 (Iowa Ct.App.1990)). A claim will survive a motion to dismiss if there are any possible set of facts which can be proved to sustain the claim. *Fusco,* 676 F.2d at 334. Again, as stated previously for purposes of a motion to dismiss, the Court does not evaluate the sufficiency of the evidence, but merely determines if the claim is legitimate under the law.

In this case, plaintiffs allege that they were in an unequal bargaining position with Principal, that Principal "held its agents out as highly skilled insurance experts ... possessing ... special knowledge," that Principal tailored its sales presentations to customer's individual needs, that Principal received confidential information from plaintiffs, and that Principal induced plaintiffs to rely on such "special knowledge and expertise.".[24] Further, plaintiffs allege that Principal had "sole knowledge of, or access to material facts" which should have been disclosed to plaintiffs.[25] The Court finds that these, along with other allegations in the complaint, are sufficient to properly allege the existence of a fiduciary duty.

This Court cannot rule as a matter of law that no such fiduciary duty could exist under the circumstances of this case. Therefore, the motion to dismiss the breach of fiduciary duty claim is denied.

G. *Principal's Argument That Plaintiff's Fail to State A Claim For Breach of Contract (Count IV)*

In Count IV of the Complaint, plaintiffs allege that Principal breached both an express and implied contract with its insureds. Principal argues that plaintiffs' claims of breach of contract are precluded by the parole evidence rule because such claims are predicated on alleged oral representations by agents and/or illustrations made prior to the signing of the contract. To support this

**23.** *See also Allstate Ins. Co. v. American Southern Home Ins. Co.,* 680 So.2d 1114, 1118 (Fla.App. 1996) (same).

**24.** See i.e. Complaint ¶¶ 36, 37 95–100.

**25.** See i.e. Complaint ¶ 99.

claim, Principal notes that the insurance contracts contained integration clauses.

Plaintiffs argue, among other things, that the insurance contracts contain ambiguities and therefore they should be read against the insurer and further that parol evidence may be used to clarify such ambiguities. Because whether or not a contract is fully integrated is a question of fact, plaintiffs claim that a motion to dismiss is improper.

■■■ The Court finds that as a general rule, an agreement is fully integrated when the parties involved adopt a writing as the final and complete expression of their agreement. See *Montgomery Properties Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 476 (Iowa 1981). When they do so, the Court agrees that extrinsic parol evidence may not be used to contradict or even supplement the terms of any such written agreement. Restatement (Second) of Contracts § 213 (1981). However, the Court also agrees with plaintiffs that whether or not a written agreement is deemed integrated is a question of fact to be determined by a review of all of the evidence. *Whalen v. Connelly*, 545 N.W.2d 284, 290 (Iowa 1996) (citing Restatement (Second) of Contracts S 209, cmt. c (1981)).[26] At the motion to dismiss stage, the Court's task is necessarily a limited one as it merely "reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683. Prior to receiving evidence, the Court is unable to determine whether or not these insurance contracts were fully integrated. Clearly, at this stage, there appear to be facts in dispute regarding the integration of these contracts. Therefore the motion to dismiss Count IV is denied.

H. *Principal's Argument That Plaintiff's Fail to State A Claim For Negligence And Negligent Misrepresentation (Counts V and VI)*

■■■ Count V of plaintiffs complaint alleges negligence on the part of Principal for failure to act with reasonable care in training and educating its agents to sell its products and to supervise those agents to ensure that they did not make material misrepresentations to potential policy holders. Count VI of the complaint alleges negligent misrepresentation, by Principal agents, of material facts in sales presentations to plaintiffs. In its motion to dismiss, Principal alleges that plaintiffs fail to state a claim for negligence or negligent misrepresentation.

It is well settled that in order to sufficiently allege a cause of action for negligence, the plaintiffs must allege the following:

(1) The existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff;

(2) A failure on the part of the defendant to perform that duty; and

(3) An injury or damage to the plaintiff proximately caused by such failure.

See *Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30, at 164–65 (5th ed.1984).[27]

■■■ A person will be liable for negligent misrepresentation, if during the course of his business or employment, he fails to exercise reasonable care in obtaining or communicating information to others and thereby supplies false information upon which they justifiably rely. See *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 924 (Iowa 1994).

Principal filed its motion to dismiss asserting that as a matter of law plaintiffs could not establish that the Principal owed them any duty. Further Principal contends that any alleged negligence was not, as a matter of law, the proximate cause of the harm alleged by plaintiffs. The plaintiffs, on the other hand, contend that the complaint contains sufficient allegations. The Courts

---

**26.** The Court notes that the same analysis applies under Florida law. See *B.F. Goodrich Co. v. Brooks*, 113 So.2d 593, 596 (Fla.App.1959) (stating "Corbin recognizes that the question whether the parties have assented to the writing as an integration is a question of fact, but he considers that the judge may either decide it himself, or may invoke 'the aid of a [jury]' ...").

**27.** See also *Cook v. Sheriff of Collier County*, 573 So.2d 406, 408 (Fla. 2d DCA 1991).

agrees with the plaintiffs that the complaint sufficiently alleges all of the elements of negligence and should not be dismissed. As stated previously, under Iowa law, insureds have a right to rely on their insurance agent, thereby creating a duty on the part of such agent. See *Rodman v. State Farm Mut. Auto. Ins. Co.,* 208 N.W.2d 903, 905 (Iowa 1973). Additionally, the Court has also previously found that plaintiffs have properly alleged the existence of a fiduciary relationship, which would thereby create a duty.[28]

Further, the Court finds that plaintiffs sufficiently allege that Principal breached its duty to them by misrepresenting various facts in order to fraudulently induce them to purchase life insurance policies.[29] Finally, plaintiffs allege that they were proximately injured by Principal's breach of duty.[30] Thus, plaintiff's negligence and negligent misrepresentation claim should not be dismissed for failure to state a claim.

I. *Principal's Argument That Plaintiffs' Claims for Equitable Relief Fail To State Cognizable Causes of Action (Counts VII and VIII)*

In Counts VII and VIII, plaintiffs seek the equitable remedies of declaratory judgment, injunctive relief and reformation. Principal argues that plaintiffs cannot prevail on these claims for several reasons. First, Principal argues that such remedies, in and of themselves, are not causes of actions, but merely flow from other successful causes of actions. Since plaintiffs have no cognizable claims, suggests Principal, they have no right to such relief. The Court, having already found that all of plaintiffs other causes of action survive the motion to dismiss, denies this argument.

Second, Principal argues that plaintiff's injunctive relief seeks only to protect existing policyholders. Relying on *Coleman v. Watt,* 40 F.3d 255, 259 (8th Cir.1994), Principal suggests that in a putative class action, injunctive relief claims, like other claims, must be analyzed only under the facts applicable to the named plaintiffs. Therefore, Principal claims that since the named plaintiffs are no longer existing policyholders, they are not entitled to injunctive relief. The Court finds Principal's reliance on *Coleman* misplaced. In *Coleman,* the Eighth Circuit specifically stated, *"[b]ecause Coleman has failed to meet the test for class certification,* his request for injunctive relief must be analyzed only as applied to him." *Coleman,* 40 F.3d at 259 [emphasis added]. In this case, there has been no motion to certify or to deny certification of the class brought before this court. Further, after an exhaustive review, the Court finds no other reported case law which supports Principal's claim that in a putative class action all claims must be analyzed only under the facts applicable to the named plaintiffs. Therefore, the Court also denies this argument.

Third, Principal argues that plaintiffs are not entitled to equitable remedies absent a showing that they have no adequate remedy at law. The Court agrees with plaintiffs that this argument is premature. Federal Rule of Civil Procedure 8 expressly permits alternative and hypothetical pleading. *See generally* 1 James Wm. Moore, *Moore's Federal Practice* § 2.03[2], at 2–25 (3d ed. 1997) ("It is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law.") Therefore, the Court denies Principal's motion to dismiss on this issue, as well.

IV. CONCLUSION

After a liberal review, the Court concludes that the plaintiffs have stated claims upon which relief can be granted. *Fusco,* 676 F.2d at 334. Therefore, based on the foregoing, defendant's Motion to Dismiss is **DENIED.**

IT IS SO ORDERED.

---

28. See Section III(F) above.

29. See Section III(E)(2) above.

30. See Section III(C) above.